UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAYSHREE SHAH,

    Plaintiff,

v.                                          Case No. 08-11300

                                                Honorable Patrick J. Duggan

GENERAL MOTORS CORPORATION,

    Defendant.
_____/

**<u>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGEMENT
ON THE ADMINISTRATIVE RECORD AND GRANTING DEFENDANT'S
MOTION FOR ENTRY OF JUDGMENT BASED ON THE ADMINISTRATIVE
RECORD</u>**

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on October 14, 2008.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                          U.S. DISTRICT COURT JUDGE

On March 26, 2008, Jayshree Shah ("Plaintiff"), a former employee of General Motors Corporation ("Defendant"), filed a complaint in this Court asserting that Defendant unlawfully terminated Plaintiff's Extended Disability Benefits ("EDB") as provided by the General Motors Life and Benefits Disability Program for Salaried Employees ("Plan").[1] Presently before this Court are Plaintiff's Motion Requesting

---

[1]In her motion, Plaintiff forfeited a separate claim for statutory damages on grounds that Defendant failed to provide Plan documents on request. Accordingly, the

Judgment on the Administrative Record and Defendant's Motion to Affirm Administrator's Decision and for Entry of Judgment Based on the Administrative Record. On October 9, 2008, the Court sent a notice informing the parties that it was dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(e)(2).

**I. Facts and Procedural Background**

Plaintiff last worked as a salaried Senior Statistician/Analyst for Defendant on May 3, 2006. At that time, Plaintiff suffered from a psychiatric breakdown rendering her incapable of returning to work. Starting May 10, 2006, Plaintiff received Sickness and Accident ("S&A") benefits from Defendant as provided for under the Plan. Because covered employees are only eligible to receive S&A benefits for a maximum of one year, Plaintiff began receiving EDB payments on May 11, 2007.

To qualify for EDB under the Plan, an employee:

> must not be engaged in regular employment or occupation for remuneration or profit and . . . the Employee must be found to be wholly prevented from engaging in regular employment or occupation with [Defendant] at the location where the Employee last worked for remuneration or profit as a result of bodily injury or disease.

(Pl.'s Mot., Ex. 5.) On grounds that Plaintiff was engaged in regular employment for remuneration or profit at a gas station in Canton, Michigan, Defendant terminated EDB payments to Plaintiff effective October 1, 2007. Defendant based its decision on six surveillance videos and reports in March, April, and September of 2007 that indicated

---

Court does not address that issue.

Plaintiff was working as a cashier. Plaintiff was informed of Defendant's decision by letter dated October 4, 2007.

On January 22, 2008, Plaintiff appealed Defendant's termination of EDB payments. Plaintiff's appeal conceded that she had been at the gas station performing the activities as described by the surveillance reports but argued that she was neither employed by the gas station nor received remuneration or profit for her services. Plaintiff explained that she often accompanies a family friend and owner of the gas station, Bharat Bhatt ("Bhatt"), on his trips to the station because her medical condition makes it unsafe for her to be left alone. Plaintiff asserted that she engaged in a variety of activities to pass the time while at the station such as watching television, helping customers, acting as cashier, and stocking shelves. Plaintiff further explained that the latter activities were merely gratuitous and did not amount to regular employment. Bhatt submitted an affidavit and wage reports from the gas station supporting Plaintiff's assertions. Bhatt and Plaintiff also revealed that Plaintiff possessed a 10% ownership interest in the station but maintained that the interest was merely an investment and that her profit or loss from the investment in no way depended on her provision of services. Ultimately, Plaintiff maintained that none of her activities or investments qualified as "regular employment or occupation for remuneration or profit."

Despite these arguments, the Plan administrator issued a letter dated February 8, 2008, affirming the conclusion that Plaintiff no longer qualified for EDB. The decision

explained that the materials submitted with the appeal had been reviewed but again relied on the surveillance videos and investigation to support the termination of EDB payments. The letter went on, however, to encourage Plaintiff to submit employment records and tax returns in support of her claims. In response, Plaintiff submitted her tax returns for the years 2001 to 2006 on February 28, 2008–her 2007 return had not yet been prepared.

Review of Plaintiff's tax returns revealed several filings related to her ownership interest in the gas station. In 2004, Plaintiff reported "non-passive" income of $5,098 and business vehicle expenses of $6,552 related to the station. Plaintiff's 2005 return did not include a schedule E for "Income or Loss From Partnerships and S Corporations" but plaintiff claimed deductions for "unreimbursed business expenses" and "travel between jobs." In 2006, Plaintiff again reported "non-passive" income of $10,204 from the station and claimed more deductions for "unreimbursed business expenses" and "travel between jobs." Based on its review of the tax returns, the plan administrator again affirmed the termination of EDB payments to Plaintiff on March 19, 2008. Plaintiff filed the present action a week later.

**II. Standard of Review**

In reviewing Plaintiff's claim, this Court is "confined to the record that was before the Plan Administrator." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). Both parties agree, that, in this case, the standard for reviewing the administrative record is "the highly deferential arbitrary and capricious standard of

4

review," because the Plan gives the administrator discretionary authority to construe the terms of the plan or determine eligibility for benefits. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). "This standard 'is the least demanding form of judicial review of administrative action . . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'" *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998) (alteration in original) (quoting *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 241 (6th Cir. 1995)). In other words, an administrator's decision will be upheld so long as it is "rational in light of the plan's provisions." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988).

While deferential, the arbitrary and capricious standard of review "is not . . . without some teeth." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (quoting *Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107-08 (7th Cir. 1998)). "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" *Evans v. Unumprovident Corp.*, 434 F.3d 866, 875-76 (6th Cir. 2006) (quoting *McDonald*, 347 F.3d at 172). Nonetheless, "[t]he court may not substitute its own judgment for the defendant's judgment," *Rakoczy v. Traveler's Ins. Co.*, 959 F. Supp. 777, 782 (E.D. Mich. 1997), and the plan administrator is granted

5

"great leeway in interpreting ambiguous terms," *Moos v. Square D Company*, 72 F.3d 39, 42 (6th Cir. 1995).

**III. Analysis**

Although Plaintiff presents plausible explanations for her presence at the gas station, the Court cannot say Defendant's termination of EDB payments was arbitrary or capricious. The combined evidence contained in the administrative record provides a reasoned explanation for the termination of EDB payments to Plaintiff. Specifically, the six surveillance videos and reports that reveal Plaintiff performing services at the gas station, Plaintiff's admission of an ownership interest, and her tax filings for "non-passive" income and business expenses related to the gas station make rational the Plan administrator's conclusion that Plaintiff was engaged in regular employment for profit.

Plaintiff's attempts to establish that reliance on the aforementioned pieces of evidence is arbitrary and capricious are unconvincing. Plaintiff argues, for example, that the Court must disregard the first three occasions on which Defendant's surveillance captured her providing services for the gas station because those occasions preceded a conclusion by Defendant on June 12, 2007, that Plaintiff was not employed. Defendant counters that Plaintiff takes the June 12 statement out of context and that it merely referred to the fact that Plaintiff was not observed working while being surveilled May 22 to 24, 2007. Looking at the record evidence, the Court tends to agree with Defendant and further notes that, even if the first three reports were disregarded, the three later

6

surveillance reports rationally support a conclusion that Plaintiff was employed. *See Hart v. Reynolds & Reynolds*, No. 92-3820, 1993 WL 243797, at *2-4 (6th Cir. July 6, 1993) (holding that plaintiff could not prove intent to deprive her of rights when the defendant believed, based on three days of surveillance, that she was working elsewhere while on disability).

Plaintiff also argues that the Court should disregard her ownership interest in the gas station and the related tax returns. Plaintiff claims that such evidence is irrelevant because she resigned her interest in the gas station on January 1, 2007–months before she began collecting EDB. Nonetheless, Plaintiff fails to cite anything in the administrative record to support this claim. In fact, Plaintiff's January 22, 2008, appeal and Bhatt's accompanying affidavit both indicate that Plaintiff continues to possess a 10% ownership interest.[2] Therefore, it was reasonable for the Plan administrator to consider Plaintiff's ownership interest when evaluating her eligibility for EDB.

Assuming her ownership interest remains intact, Plaintiff nonetheless argues that her 2004-2006 tax returns should have no bearing on her EDB eligibility because she did not begin collecting EDB until 2007. While a valid point, this does not render her tax returns completely irrelevant. Although the tax returns are not dispositive on the issue of whether Plaintiff was regularly employed for profit in 2007, Plaintiff's tax history gives

---

[2] Plaintiff's appeal letter states, "Ms. Shah *does* posses [sic] a 10% ownership interest in Canton Petroleum, LLC," and Bhatt indicated, "Since 2001, Ms. Shah has possessed a 10% ownership interest in Canton Petroleum, L.L.C." (Def.'s Mot., Ex. H (emphasis added).)

7

context to other facts in the administrative record, namely that she was observed working at the gas station six times in 2007 and maintains an ownership interest therein.

Of particular interest in Plaintiff's tax returns is the fact that she claimed "non-passive" income from the gas station in 2004 and 2006. To qualify as "non-passive" income, Plaintiff had to "materially participate" in the income production or, more specifically, Plaintiff had to be regularly, continuously, and substantially involved in the operations of the activity. 26 U.S.C § 469(c)(1), (h). Furthermore, to be eligible for business deductions in 2004, 2005, and 2006, Plaintiff must have been "involved in the activity with continuity and regularity and [her] primary purpose for engaging in the activity must [have been] for income or profit." *Commissioner v. Groetzinger*, 480 U.S. 23, 35, 107 S. Ct. 980, 987 (1987). Combining these standards with Plaintiff's prior tax returns and continued activity at the gas station in 2007, it was not unreasonable for the Plan administrator to conclude that Plaintiff was involved in regular employment for profit. *See Meyer v. Ins. Co. Of America*, No. 96 Civ. 4678 (AJP), 1998 WL 709854, *8-11 (S.D.N.Y. Oct. 9, 1998).

Finally, Plaintiff asserts that, even if she was employed as a cashier at the gas station, the income from such employment relative to her prior earning capacity would be so insubstantial that it could not qualify as regular employment for profit under any reasonable interpretation of Defendant's Plan. In making this argument, Plaintiff relies on the Sixth Circuit's unpublished decision in *Tracy v. Pharmacia & Upjohn Absence*

8

*Payment Plan*. 195 Fed. Appx. 511 (6th Cir. 2006). While interpreting a plan provision that disqualified individuals capable of "gainful employment" from receiving disability benefits, the *Tracy* Court held that gainful employment requires that a claimant "earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability." *Id.* at 519 (adopting *Helms v. Monsanto*, 728 F.2d 1416, 1421-22 (11th Cir. 1984)). Plaintiff's reliance on *Tracy*, however, is misplaced.

*Tracy* is distinguishable from the present case in several ways. In deciding *Tracy*, for example, the Sixth Circuit was not constrained by the arbitrary and capricious standard and the accompanying requirement of deference to the administrator's interpretation of ambiguous terms. *Id.* at 516. To the contrary, the court performed a de novo review and was able to interpret plan language on a clean slate. Furthermore, the plan in *Tracy* specifically referred to "gainful" employment rather than "regular" employment "for remuneration or profit." Nonetheless, this Court need not extrapolate on whatever legal distinctions might exist between these terms because, when properly characterized, Plaintiff's employment activity satisfies both standards. Although Plaintiff characterizes the issue as whether full-time employment as a cashier qualifies as "regular" employment "for profit," the record evidence supports a conclusion that Plaintiff actually works as part owner of the station. Plaintiff's "regular, continuous, and substantial" contributions to the gas station in this capacity for the "primary purpose" of

9

obtaining "income or profit" sufficiently support the conclusion that Plaintiff was both "gainfully" and "regularly" employed "for profit." Under the minimally demanding arbitrary and capricious standard, this Court cannot say that the Plan administrator irrationally terminated EDB payments to Plaintiff.

**IV. Defendant's Claim for Return of Overpayments**

In its answer to Plaintiff's initial complaint, Defendant made the following assertion as an affirmative defense:

> Should there be a determination that Plaintiff is entitled to benefits, General Motors is entitled to a set off and/or equitable recoupment for any other income benefits that are to be taken into account in calculating Plaintiff's benefits under the terms of the Program, including specifically the overpayment of disability benefits resulting from the retroactive Social Security Disability Insurance Benefit.

(Affirm. Defenses ¶ 6.) Defendant failed, however, to file a counterclaim against Plaintiff on this basis. Nonetheless, Defendant devotes a section of its response brief to the argument that Plaintiff owes $19,288 on account of overpayment. The Court will not analyze this argument until Defendant properly asserts a claim against Plaintiff.

**V. Conclusion**

Based on the evidence in the administrative record, this Court believes that Defendant did not act arbitrarily or capriciously in terminating Plaintiff's EDB payments under the Plan. Defendant made its decision on record evidence that Plaintiff was observed working at a gas station on six occasions, held an ownership interest in the station, and historically claimed "non-passive" income and business deductions related to

10

the station.  Reviewing the administrative record under the highly deferential standard of review applicable in this case, this Court believes that the evidence rationally supports the conclusion that Plaintiff was engaged in regular employment for profit and, therefore, that she is ineligible for EDB.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Affirm Administrator's Decision and for Entry of Judgment Based on the Administrative Record is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Ilana S. Wilenkin, Esq.
David M. Davis, Esq.